## VALIDITY OF MUNICIPAL ELECTRICAL LIGHT BONDS.

Court of Appeals for Huron County.

CLEVELAND, S. & C. RAILWAY v. CITY OF NORWALK ET AL.*

Decided, February 27, 1915.

*Municipal Corporations—Publication of Resolution to Submit to Electors the Question of Issuing Municipal Electric Light Bonds Not Required—Where no School Commissioners Have Been Appointed, Such an Issue Should be Offered to the Municipal Sinking Fund Trustees.*

1. Sections 3942 to 3947, General Code, authorizing submission to the electors of the question of issuing certain municipal bonds, make complete provision for putting them forth, and such an issue is not subject to the requirement that there be a formal publication of the resolution of council declaring the necessity therefor.

2. Where there has been no appointment of a board of commissioners of the district, as provided by Section 7614, the tender of an issue of municipal electric light bonds should be made to the trustees of the sinking fund of the municipality, and not to the board of education.

L. W. *Wickham* and *Tolles, Hogsett, Ginn & Morley,* for plaintiff.

R. D. *Wickham* and G. *Ray Craig,* contra.

KINKADE, J.; RICHARDS, J., and CHITTENDEN, J., concur.

The plaintiff, as a tax-payer of the city of Norwalk, brought an action praying for an injunction to restrain the city of Norwalk and its officials from issuing and selling any portion of a certain issue, aggregating $120,000, of municipal bonds, which it was alleged the city was about to issue for the purpose of erecting and constructing an electric light plant for the use of the city. The defendants demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of ac-

---

*Affirming *Cleveland, S. & C. Ry. Co.* v. *Norwalk,* 17 N.P. (N.S.), —,

tion. The relief prayed for in the petition and the amendment thereto, is based on two grounds:

1. That the resolution passed by the council declaring the necessity of issuing these bonds for the purpose mentioned and providing for the submission of the question of their issuance to a vote of the electors, had never been published as required by statute; and

2. That prior to offering the bonds at public sale, neither said bonds nor any part thereof had been offered "to the board of commissioners of the sinking fund of said Norwalk School District."

Attached to the petition and made a part thereof, is a copy of the original resolution passed by the council, and also a copy of the ordinance providing for the sale of the bonds, together with a copy of the notice of the sale of the bonds. No contention is made that the ordinance referred to was not published as required by law, or that the notice of the sale of the bonds was not given proper publicity. Reference to the copy of the resolution attached to the petition and made a part thereof, discloses that it made full provision for submitting the question of the issue of these bonds to a special election to be held in the city of Norwalk.

There is no allegation in the petition that prior to offering these bonds for sale under the ordinance, they were not offered to the board of trustees of the sinking fund of the city of Norwalk. In the absence of such an allegation, a presumption that the officers of the city were discharging their duty according to law would prevail, and, therefore, that these bonds had been offered to the trustees of the city sinking fund before being offered for sale. Neither is there any allegation in the petition that the bonds were not offered as the law provides they must be to the industrial commission before being offered for sale, and the same presumption would attend in this respect.

The amendment to the petition sets forth that the board of education of the city school district of the city of Norwalk had a bonded indebtedness and "had in its possession a sinking fund for the extinguishment of said bonded indebtedness," and fur-

ther on in the amendment occurs the language quoted above, stating that no offer had been made, etc. There is no statement in the petition or the amendment that there had been an appointment made by the court of common pleas of Huron county of a board of commissioners designated as the "Board of Commissioners of the Sinking Fund," as provided in Section 7614, General Code, to take charge of the sinking fund of the board of education. It was contended in argument in behalf of the plaintiff, that the true construction of this section must be that in the event of no board of commissioners being so appointed by the court of common pleas, then the board of education itself becomes the board of commissioners for its own sinking fund. We can not concur in this construction of Section 7614. We think that the section clearly means that where the court of common pleas has appointed no such board, then and in that event the board of trustees of the city or village sinking fund may take charge of and act for the school board in the management of the sinking fund of that board. In such case the same persons would be acting as trustees for the city in the management of the sinking fund of the city and also in the management of the sinking fund of the board of education. If these bonds were in fact offered to the trustees of the sinking fund of the city, there is nothing in the petition to show whether the offer was to these individuals as trustees of the sinking fund only, or was an offer in general which the trustees might consider as addressed to them in their dual capacity, if they were acting for both funds. Keeping in mind the presumption that the officials were discharging their duty as required by law, we think the petition is not sufficiently definite to show that there had been a violation of the law with respect to tendering these bonds, before sale, to the sinking fund commissioners of the school district, as required by statute.

The more serious question involved in this case is the one arising by virtue of the omission to publish the initial resolution declaring the necessity for this issue of bonds. It is conceded by counsel for plaintiff that there is no section of the statute that provides in exact terms that a resolution of this character shall

be published, but it is said that the word "resolution" and the word "ordinance" are used interchangeably all through the statutes, and that the only fair interpretation of the sections of the statutes requiring the publication of ordinances of municipal councils is that these statutes apply with equal force to resolutions as well, and it is said that this is particularly true with respect to all resolutions that are of a general or permanent character; that it matters not what title may be given to the act, whether ordinance or resolution, but it is the substance that controls, and that two acts of the council that are in substance the same must be treated the same with respect to publication, regardless of whether they be named ordinances or resolutions. There is much force in the contention of plaintiff in this respect, and if there had been an entire omission to publish this initial resolution as passed, it might be difficult to sustain the validity of these bonds by reason of that.

We call attention to the following sections of the General Code as found in 102 O. L., 264:

"Section 3942. Paragraph 4. In addition to the authority granted in section one (1) (G. C., 3939) of this act and supplementary thereto, the council of a municipal corporation, whenever it deems it necessary, may issue and sell bonds in such amounts, or denomination, and for such period of time and rate of interest not exceeding 6 per cent. per annum, as it may determine upon for any of the purposes set forth in said section one (G. C., 3939), upon obtaining the approval of the electors of the corporation at a general or special election in the following manner."

"Section 3943. Paragraph 5. The council, by resolution passed by an affirmative vote of not less than two-thirds of all the members elected or appointed thereto, shall declare it necessary to issue and sell bonds of the corporation. Such resolution shall state the purpose and amount of said issue, and shall fix a date upon which the question of issuing and selling such bonds shall be submitted to the electors of the corporation. Council shall then cause a copy of such resolution to be certified to the deputy state supervisors of the county in which the corporation is situated."

"Section 3944. Paragraph 6. The deputy state supervisors shall prepare the ballots and make the necessary arrangements for the submission of such question to the electors of such municipal corporation at the time fixed in the resolution."

"Section 3945. Paragraph 7. The election shall be held at the regular place or places of voting in the municipality, and be conducted, canvassed and certified in like manner, except as otherwise provided by law, as regular elections in the municipal corporation for the election of officers thereof."

"Section 3946. Paragraph 8. Thirty days' notice of the election shall be given in one or more newspapers printed in the municipality once a week for four consecutive weeks prior thereto, stating the amount of bonds to be issued, and the purpose for which they are to be issued, and the time and place of holding the election. If no newspaper is printed therein, the notice shall be posted in a conspicuous place and published once a week for four consecutive weeks in a newspaper of general circulation in the township or municipal corporation."

"Section 3947. Paragraph 9. If two-thirds of the voters voting at such election upon the question of issuing the bonds vote in favor thereof, the bonds shall be issued. Those who vote in favor of the proposition shall have written or printed on their ballots, 'For the issue of bonds;' and those who vote against it shall have written or printed on their ballots, 'Against the issue of bonds.'"

It will be noted that the initial resolution must be passed by a two-thirds vote of the council and the resolution must set forth the necessity, purpose and amount of the contemplated bond issue, and fix the date upon which the election is to be held at which the authority is to be procured for issuing the bonds, and provision is also made for sending to the election officials a certified copy of the resolution so passed by the council, and thereupon it becomes the duty of the election officials to make provision for the holding of the election called for by the resolution, according to law, and ample provision is made for the publication of the notice of the time and place of the holding of this election, and this notice of election, like the resolution, is required to state the amount of the bonds to be issued, the

purpose for which they are to be issued, as well as the time and place of holding the election, and the authority to issue the bonds can only come to the council in the event that two thirds of the voters voting at the election vote in favor of the issuing of the bonds. The sections of the General Code quoted appear to make complete provision for the issuing of municipal bonds under circumstances like those attending the case at bar, and it is difficult to see any necessity for a double publication such as would be necessary if the council were required to first publish the resolution and then the election officers in giving notice of the election were required to publish practically the same thing and for a longer period of time.

Even though it be conceded, as claimed by council for the plaintiff, that this was a resolution of such character as that the law required it to be published, nevertheless, we are unanimously of the opinion that if the provisions of the sections of the General Code quoted above, have been complied with, and the presumption is that they have, and there is no allegation that they have not, then it follows that, although there was not a formal publication of the resolution such as usually appears in the public press, pursuant to the provisions of Section 4228, General Code, such publication was made of this resolution as answered in effect all the requirements of the law with respect to publication.

Our conclusion is that the plaintiff is not entitled to the relief prayed for; that the demurrer should be sustained; the temporary restraining order which was granted dissolved; and the petition dismissed at the costs of the plaintiff. The taking effect of the dissolution of the temporary restraining order will be suspended until March 3, 1915. An entry may be drawn by council in accordance with this opinion.